UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| Nola M. Coon, | ) |
|                 Plaintiff, | ) |
| | ) Civil No. 3:05cv43 |
| v. | ) |
| Jo Anne B. Barnhart, Commissioner of Social Security, | ) |
|                 Defendant. | ) |

**REPORT AND RECOMMENDATION**

Plaintiff Nola M. Coon (hereinafter "Coon," "claimant" or "plaintiff") initiated this action under 42 U.S.C. §405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") terminating her disability benefits. Before the court are both parties' motions for summary judgment. For the reasons articulated in this memorandum, the magistrate judge recommends Plaintiff's Motion for Summary Judgment  (Doc. #7) be **GRANTED**, **in part**, the Commissioner's Motion for Summary Judgment (Doc. #10) be **DENIED**, and the case be remanded to the Commission for further findings.

Plaintiff applied for disability benefits on October 16, 1997 under sections 216 and 223 of Title II of the Act, alleging disability since June 1997. In her disability report, claimant asserted she was disabled due to Crohn's disease, depression and stress anorexia-J tube feedings. (Tr. 96). She detailed intermittent vomiting and bouts of diarrhea, resulting in a frequent need for hospitalization due to an electrolyte imbalance and dehydration. (Tr. 96-101). Plaintiff was awarded a period of disability. (Tr. 38). In

1

the Disability Determination and Transmittal the primary diagnosis was identified as "Organic mental disorder" and the secondary diagnosis was "Eating Disorder." Id. Both diagnoses are associated with a code. Id. The code pertaining to the Eating Disorder diagnosis was initially stated as 5690, but was crossed out and a different code written below. Id. The Remarks section of the form states the code was changed by DOB. Id.

In December 2000, a disability examiner determined plaintiff's medical condition had improved:

> The current medical evidence shows she has a history of treatment for dysthymia and an adhesive bowel obstruction which required surgical procedures in July 2000. She has also been treated for residual Crohn's disease.
>
> Evaluation of the current medical evidence shows her physical condition has improved following bowel adhesion surgery in July 2000. The Crohn's disease is being controlled with medications and she is able to maintain adequate weight and nutrition. She has not required additional medical treatment since her follow up examination on 8-22-00. She has no physical limitations. A current psychological evaluation shows significant improvement in her mental condition. Her cognitive functioning has improved and her depression and somatoform disorders are improved. She currently has a diagnosis of dysthymia and a personality disorder. While she continues to have some mental functional limitations, she has the ability to engage in substantial gainful work activities.

(Tr. 43). The Notice of Termination of Benefits identified plaintiff's primary alleged disability as "Dysthymic disorder" and the secondary diagnosis as "Bowel obstruction secondary to adhesions with history of Crohn's disease, status post operative." (Tr. 42). Codes were again assigned to the diagnoses. Interestingly, the code assigned to the bowel obstruction and Crohn's condition was 5690, the same code assigned to plaintiff's initial determination and later changed, presumably to coincide with the diagnosis of anorexia. This subsequent modification proves critical, as discussed below.

Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). An administrative hearing was held on April 8, 2003. On June 19, 2003 the ALJ issued a decision finding claimant's entitlement to a period of disability had ended.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council. On or about March 7, 2005, the Appeals Council denied plaintiff's request for review, affirming the decision of the ALJ as the final decision of the Commissioner.   Plaintiff sought judicial review of the Commissioner's decision in a Complaint filed April 12, 2005.

## I.  Legal Standard

Continued receipt of Social Security benefits is reviewed periodically.  The framework for review and the applicable standard are outlined in 20 C.F.R. § 404.1594(a)(2005):

> (a) General.  There is a statutory requirement that, if you are entitled to disability benefits, your continued entitlement to such benefits must be reviewed periodically.  If you are entitled to disability benefits as a disabled worker ..., there are a number of factors we consider in deciding whether your disability continues.  We must determine if there has been any medical improvement in your impairment(s) and, if so, whether this medical improvement is related to your ability to work.  If your impairment(s) has not medically improved we must consider whether one or more of the exceptions to medical improvement applies.  If medical improvement related to your ability to work has not occurred and no exception applies, your benefits will continue.  Even where medical improvement related to your ability to work has occurred or an exception applies, in most cases, ... we must also show that you are currently able to engage in substantial gainful activity before we can find that you are no longer disabled.

20 C.F.R. § 404.1594 (a)(2005).  Thus, a claimant's disability will be found to have ended if it is shown that medical improvement related to the claimant's ability to do

work has occurred, and the claimant is currently able to engage in substantial gainful activity.  Medical improvement is defined as:

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and /or laboratory findings associated with your impairment(s).

20 C.F.R. § 404.1549(b)(1).

## II.  Analysis

Claimant argues the ALJ improperly limited his review on the issue of improvement in her physical condition to the diagnosis of anorexia, stating, "The ALJ appears to have mixed up what case was being determined, since he claimed her original determination was based on anorexia, an atypical eating disorder, … ."  <u>Plaintiff's Brief in Support of Summary Judgment</u>, at 4-5.  The magistrate judge is left with the same impression, particularly in light of the ALJ's cursory finding of medical improvement:

> One of the impairments based on which the claimant was found disabled was an eating disorder.  Evidence in connection with the initial award of benefits show treatment under diagnoses of anxiety-induced anorexia and atypical eating disorder.  The claimant's vomiting caused fluid and electrolyte imbalance and hospitalizations for tube feedings.
>
> <u>Medical evidence in connection with the continuing disability review does not document hospitalizations or medical follow up for anorexia and/or an eating disorder.</u>  Further, records from a treating physician document relatively stable weights from July 1999 through April 2002.
>
> Based on the above, there is documented improvement in the claimant's eating disorder since the comparison point of December 31, 1997.

(Tr. 21) (emphasis added).

The record is replete with medical treatment relating to claimant's gastrointestinal issues, and specifically Crohn's disease, through the date of the hearing before the ALJ.  Claimant's medical records document complaints of vomiting, stomach pain, and diarrhea, with numerous hospitalizations for dehydration as a result of repeated vomiting and diarrhea.  Records of Foster County Medical Center between August 11, 1999 and April 8, 2003 reveal treatment for abdominal disorders causing bloating, dry heaves, nausea, vomiting, abdominal pain and cramps, diarrhea, and depression.  (Tr. 616-654, 665-668, 693-95, 751).  Claimant was hospitalized on numerous occasions, in addition to the July 2000 bowel adhesion surgery noted by the disability officer. (Tr. 576).  Coon was hospitalized from July 20 to 31, 2000, because of nausea, dry heaves and abdominal distention.  She underwent an exploratory laparotomy of lysis lesions.  She had some complications following surgery and was taken back to the operating room "where she had a re-repair of her abdominal wall."  She progressed reasonably well after the second surgery and was discharged in an improved condition with a fair prognosis.  (Tr. 577-579).  Claimant was again hospitalized between September 6 and 10, 2000 with a diagnosis of "acute bowel obstruction with gastric distention, history of hypokalemia, and status post exploratory laparotomy with lysis of adhesions for bowel obstruction and subsequent wound dehiscence."  Claimant was in moderate distress from nausea, vomiting and abdominal distention.  Her condition at discharge was again improved, but with a <u>guarded</u> prognosis.  (Tr. 594, 596-97).  On November 27, 2000, claimant was seen by Dr. John M. Satchell with complaints of alternating periods of constipation and diarrhea, "mostly diarrhea at this time."  (Tr. 621).   Dr. Satchell opined that her problems may be a result

of Irritable Bowel Syndrome and prescribed medication accordingly. (Tr. 621). Claimant continued to treat with her primary physician Dr. James Craig. In a report dated December 19, 2000 she presented to Dr. Craig with complaints of "bloating, nausea, some right sided abdominal pain which radiates across her abdomen." (Tr. 619). Claimant saw Dr. Craig again on December 20, 2000 for re-evaluation. Dr. Craig noted that although the partial obstruction had apparently improved, she continued to complain of dry heaves. (Tr. 619).

On January 29, 2001 claimant presented to the Foster County Medical Center for "small red lumps on the back of her thighs" diagnosed as erythema nodosum, and for "some increasing amount of lower abdominal cramping and nausea." (Tr. 694). Dr. Page recognized her history of Crohn's and noted a "questionable mild exacerbation," treating her conservatively because of her "history of bleeding ulcers." (Tr. 694). Again in February 7, 2001 claimant presented to the clinic "to recheck her erythema nodosum." Dr. Page opined, "I think she is having a mild exacerbation of her Crohn's." She was prescribed Augmentin which "did not help a heck of a lot." (Tr. 693). Claimant was again hospitalized on May 3, 2001 for "increasing difficulties with increased abdominal distention, nausea, dry heaves." (Tr. 713). She was placed on IV fluids and given NG suction, which improved her condition to the point of discharge on May 4, 2001. (713-715). Again on January 17, 2002 claimant was hospitalized for "bowel rest and IV hydration" following complaints of dry heaves, abdominal pain and diarrhea. (710-712). May 1, 2002 brought yet another hospitalization for purposes of hydration and bowel rest. Dr. Craig noted claimant was in distress because of abdominal

distention and vomiting, and was "felt to have a repeat bowel obstruction at this time which was confirmed on flat plate of the abdomen." (Tr. 708-709).

Claimant continued to require medical intervention for her gastrointestinal issues well into 2002. On November 4, 2002 claimant sought treatment for "nausea and dry heaves that started the previous Friday." She was evaluated to "have some abdominal distention and appeared to be partial obstruction on her abdominal series." Treatment consisted of IV fluids, supplemental potassium, and enemas. (Tr. 706-707).

The last hospitalization in the record before the court occurred from February 4 to February 8, 2003. (Tr. 704). Claimant was again diagnosed with partial bowel obstruction, hypokalemia, dehydration, and acute bronchitis. She reported nausea, dry heaves and diarrhea for the preceding four days and was determined to be in need of hospitalization "for further workup and treatment." (Tr. 704). She was discharged in an improved condition with a fair prognosis. (Tr. 704).

The magistrate judge is not prone to speculation, but makes the "educated guess" that the ALJ limited his analysis to "anorexia and/or an eating disorder" due to the earlier noted "mix-up" in the identifying disability codes. For whatever reason, the ALJ did not make a finding as to whether or not claimant's gastrointestinal issues or Crohn's condition had medically improved. The ALJ acknowledged claimant's "longstanding history of Crohn's disease with multiple hospitalizations and surgeries," (Tr. 26), but failed to consider whether these impairments were a continuation of the earlier disability finding. Accordingly, the magistrate judge recommends a finding that the Commissioner failed to tie her finding of medical improvement to the full range of

conditions upon which the disability determination was based, and that this action be remanded to the Commissioner for further findings.

Coon argues "the evidence of the record clearly establishes a worsening in all of the claimant's medical conditions that were in existence at the time of her original award." <u>Plaintiff's Brief in Support of Motion for Summary Judgment</u>, at 6. Before addressing this alleged error, the court notes the deferential standard of review applied to these cases. The court must affirm the Commissioner's decision if substantial evidence appearing in the record as a whole supports the decision. <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184 (8th Cir. 1989). The Commissioner's decision is not subject to reversal simply because the reviewing court would have reached a different conclusion or because substantial evidence also exists which would support a contrary outcome. <u>Sultan v. Barnhardt</u>, 368 F.3d 857, 863 (8th Cir. 2004). If after review the court is capable of drawing two inconsistent positions and one of those positions represents the Commissioner's findings, the decision must be affirmed. <u>Dixon v. Barhhardt</u>, 353 F.3d 602, 605 (8th Cir. 2003).

The ALJ found improvement in the claimant's cognitive function, stating that ongoing deficits in memory and cognitive function are "not shown by psychological testing performed in November 2000." (Tr. 23). The ALJ further noted: "That examiner opined that a return to a greater level of psychosocial function was likely in that the symptoms were moderate." (Tr. 23). Claimant argues the ALJ 's finding that "she has been absent from any regular psychiatric follow up or psychological counseling" is not supported by the evidence. (Tr. 25). Specifically, plaintiff argues her psychiatric hospitalization records in 2002 indicate she has a "14-year history of recurrent

8

depression" with "depression every day, hopelessness, crying spells, sleep disturbance. Both difficulty falling asleep and maintaining sleep. Occasional suicidal ideation." <u>Plaintiff's Brief in Support of Motion for Summary Judgment</u>, at 8.

While claimant cites to evidence in the record indicative of a psychiatric disorder, the magistrate judge finds evidence cited by the ALJ substantially supports his determination of medical improvement in that disorder. Therefore, the undersigned recommends a finding affirming the ALJ's determination of improvement as to claimant's psychological condition.

### III.   Conclusion

**IT IS HEREBY RECOMMENDED that:**

1. Plaintiff's Motion for Summary Judgment (Doc. # 7) be **GRANTED, in part;**

2. Defendant's Motion for Summary Judgment (Doc. # 10) be **DENIED**; and

3. The matter be **REMANDED** to the Commissioner in accordance with the recommended findings herein.

Pursuant to Local Rule 72.1(E)(4), any party may object to this recommendation on or before September 26, 2006.

Dated this 12th day of September, 2006.

Karen K. Klein
United States Magistrate Judge